[Cite as *Mogg v. McCloskey*, 2013-Ohio-4358.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LAURA MOGG | ) | CASE NO. 12 MA 24 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| CROSS-APPELLANT | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| RANDY McCLOSKEY | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |
| CROSS-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common
Pleas, Domestic Relations Division, of
Mahoning County, Ohio
Case No. 08 DR 613

JUDGMENT:     Reversed and Remanded.

APPEARANCES:

For Plaintiff-Appellee/Cross-Appellant:     Atty. Louis Katz
70 West McKinley Way
Poland, Ohio 44514

For Defendant-Appellant/Cross-Appellee:     Atty. Christopher P. Lacich
Atty. David S. Barbee
Roth, Blair, Roberts, Strasfeld & Lodge
100 Federal Plaza East, Suite 600
Youngstown, Ohio 44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: September 30, 2013

WAITE, J.

{¶1} This matter comes to us on appeal from the trial court's decision to terminate shared parenting. Father, Randy McCloskey, Appellant and Cross-Appellee, filed a motion seeking to be named residential parent for schooling purposes. Mother, Laura Mogg, Appellee and Cross-Appellant, opposed father's motion and filed a motion to terminate shared parenting. Father now appeals the trial court's decision denying his motion and granting mother's motions. Mother, in her cross-appeal, challenges the trial court's decision to grant more than the minimum amount of parenting time to father and appeals the deviation ordered by the trial court from the presumed child support amount.

{¶2} Although ample material appears in the record to support the trial court's decision to terminate shared parenting, the trial court did not make the necessary findings or adopt and incorporate the magistrate's findings in its final order. Similarly, the magistrate made specific findings concerning parenting time, but the trial court did not adopt or incorporate those findings. Nor did the court make the necessary determination that its decision regarding parenting time is in the best interest of the child. Unlike the state of the record as to termination of shared parenting, the support ruling challenged by mother in her cross-appeal does not appear to be supported by appropriate evidence of record. For these reasons, the trial court's decision is reversed in its entirety and the matter is remanded for further proceedings.

Factual and Procedural History

{¶3} Mother and father were married on February 10, 2001. A single minor child R.M., was born of the marriage on July 27, 2003. The parties' marriage was dissolved by decree on December 23, 2008. The decree of dissolution incorporated a shared parenting plan negotiated by the parties which was adopted by the court. Under the shared parenting plan, mother was designated as the residential parent for school purposes. As a result, R.M. attended Canfield Schools. At the time of dissolution and for several years after, mother, R.M. and at least two other children lived with mother's parents in Canfield. The shared parenting plan divided parenting time equally between father and mother on an alternating weekly schedule. The parties initially agreed to a child support amount far less than the presumptively correct amount prescribed by the statutory worksheet, and later reduced it even further by agreement.

{¶4} In March of 2011, father was preparing to pick up R.M. for a mid-week visit. Shortly before, mother notified father that she and R.M. had moved and gave him the new address. Father also learned that due to the move mother had withdrawn R.M. from the Canfield school system. Father initially believed that R.M. would be attending Youngstown schools, but later learned that mother had enrolled R.M. in Austintown, which has open enrollment, is near mother's new home, and is a "blue ribbon" school.

{¶5} Father filed a motion for modification of parental rights and responsibilities but did not seek any other change in the existing shared parenting plan. Father asked to be designated R.M.'s residential parent for schooling

purposes, so that he could place R.M. in the Jackson-Milton school system. Mother, however, asked the court to terminate shared parenting. She sought to have the court designate her as the residential parent for R.M. and address child support, health care coverage, and the allocation of the dependent child income tax exemption. Mother's motion for reallocation of parental rights did not address parenting time. The parties were unable to resolve the matter in mediation and a guardian ad litem was appointed for R.M.

{¶6} Mother testified that R.M. spends the majority of the child's afterschool time with the paternal grandparents, not with father, when she is available to care for R.M. after school. Mother takes care of the large majority of R.M.'s medical and school-related needs and is extremely involved in R.M.'s education. Father, on the other hand "feels that it is [R.M.'s] teachers' job to educate [R.M.], and that it is not generally a parent's responsibility to educate their children." He does not verify whether R.M. has completed homework when R.M. stays at his house. (10/7/11 Magistrate's Dec., ¶32.) R.M. sometimes turns in incomplete assignments that were to be completed during father's parenting time. (10/7/11 Magistrate's Dec., ¶32). Father has disappointed and upset R.M. by not attending school functions.

{¶7} The magistrate found that father was intentionally uncooperative, uncommunicative, and disdainful of mother. The magistrate concluded that father did not understand the importance of communication, cooperation, and flexibility regarding the parenting schedule, and belittled or ignored mother in R.M.'s presence. (10/7/11 Magistrate's Dec., ¶30.) Father regularly refused to communicate verbally

with mother; evidence of this behavior included his failure to explain the presence of a new medication with R.M.'s things when asked. (10/7/11 Magistrate's Dec., ¶25.) Father denigrated mother and R.M.'s Catholic faith. Father's openly negative attitude toward mother was demonstrated by tombstone-style signs he decorated his yard with at Halloween aimed at mother and which he admitted to the guardian ad litem were inappropriate. Father apparently discouraged (or never encouraged) R.M. from purchasing gifts for mother on holidays.

{¶8} The guardian ad litem acknowledged that father needed to change his pattern of interaction with mother and adjust his behavior to foster a positive relationship between R.M. and mother and that the parties had, to date, failed to cooperate and engage in joint decision making. The guardian noted that mother, unlike father, did foster "the sharing of love, affection, and contact between the minor child and the other parent." (10/7/11 Magistrate's Dec., ¶53.) The guardian ad litem nevertheless recommended that the parties continue under the shared parenting plan and that father be designated the residential parent for schooling purposes. The guardian ad litem specifically based his recommendation on the belief that, in the future, the parties would be able to cooperate and make joint decisions despite the fact that he recognized that no joint decision making or cooperation had occurred to date.

{¶9} The magistrate's decision includes eighty-seven findings of fact and extensive references to testimony, and explicitly addresses the statutory factors contained in R.C. 3109.04(E)(2)(c), (F)(1), and (F)(2). The magistrate noted that

father's intentionally uncooperative behavior had continued since the marriage dissolved, found father's behavior appalling, and emphasized that "stubbornly refus[ing] to cooperate in virtually any way" was causing harm to R.M. that father would not acknowledge. (10/7/11 Magistrate's Dec., ¶63.) The magistrate concluded: "Frankly, it is hard to imagine a situation where parents would be less able to cooperate and make joint decisions, except for a case involving domestic violence." (10/7/11 Magistrate's Dec., ¶70.)

{¶10} The magistrate and the court did not rely on the guardian ad litem's opinion and instead focused on the fact that, although the parties shared equal time with R.M., they had not at any time engaged in true shared parenting. The magistrate ultimately stated:

> * * * it would be in the best interest of the minor child for shared parenting to be terminated. The parties cannot cooperate and make joint decisions. [Mother] has the ability to encourage the sharing of love, affection, and contact between [R.M.] and [father], however [father], while being capable of following the parenting time schedule to the minute, does not currently have the ability to encourage the sharing of love and affection between [R.M.] and [mother]. The parties to this case are simply and totally unable to communicate, cooperate and make joint decisions. They cannot even discuss [R.M.]'s prescribed medication. They do not amicably exchange [R.M.]'s clothing and other personal property on a regular basis. They cannot work out even minor

changes to the parenting time schedule. They cannot agree on religious issues regarding their [child].

(10/7/11 Magistrate's Dec., ¶70.) The magistrate decided that it would be in the best interest of R.M. for shared parenting to be terminated and designated mother the residential parent.

{¶11} Having made findings on each of the sixteen points included in R.C. 3109.051, the magistrate ordered father be granted parenting time according to the following schedule:

[D]uring the school year, every other weekend, from Friday at 6:00 p.m. through Tuesday morning when he shall be responsible for transporting the minor child to school. On the Wednesday prior to his weekend parenting time, [father] shall be entitled to parenting time from 5:00 p.m. to 8:00 p.m. On the Thursday following his weekend of parenting time, [father] shall be entitled to parenting time from 5:00 p.m. until 8:00 p.m. During the summer months, the parties shall follow the schedule contained in the Local Parenting Time Schedule[.] * * * For holidays and other days of special importance, each party shall be entitled to parenting time in accordance with the Local Parenting Time Schedule attached as Exhibit A which is incorporated as if fully rewritten herein. (Emphasis sic.)

(10/7/11 Magistrate's Dec., ¶79.) In the original shared parenting plan, the parties split time with R.M. weekly from Sunday at 6 p.m. to Sunday at 6 p.m. with mid-week

parenting for each parent when R.M. stayed with the other on Wednesday from 4 p.m. to 8 p.m. The parties followed the local parenting time schedule for "holidays and vacations other than summer vacation." (12/23/08 Shared Parenting Plan, Article 3 and 4.) The local parenting time schedule for summer vacation is the same schedule the parties already used.

{¶12} The parenting time schedule ordered by the magistrate gave father approximately 1.5 additional days, every other week, during the school year than the standard award. However, his parenting time mid-week was reduced by one hour, year round, and the time father spent with R.M. every other week during the school year was reduced, to three full twenty-four hour periods and 6 p.m. Monday until he drops R.M. off for school Tuesday morning (approximately an additional half day). The magistrate found that additional parenting time with father was in R.M.'s best interest, because R.M. was accustomed to spending almost equal time with both parents and had good relationships with both parents. (10/7/11 Magistrate's Dec., ¶80.)

{¶13} Mother also requested a modification of child support, provisions for health insurance coverage, and the allocation of the depending child tax exemption. The magistrate found that mother had an annual gross income of $46,751.00 from Youngstown City Schools, pays $750.00 per year in union dues, and provides health insurance for R.M. at a cost of $744.00 per year. The magistrate found father's income to be $47,000.00 with union dues of $2,200.00 per year and insurance for R.M. at no cost. Under the Ohio Child Support Guidelines, R.C. 3119.02, father's

presumptively correct child support obligation would be $5,688.18 per year (approximately $474 a month without a processing fee). Under the shared parenting plan the parties had waived the child support calculation and instead father paid an agreed amount of $150 per month. This original amount was later reduced by the court to $100 per month in June, 2010, when a motion for reduction filed by father was granted. Although the presumptively correct amount in 2012 was $5,688.18, the magistrate recommended a 40% reduction in the support award "based on the parenting time schedule." (10/7/11 Magistrate's Dec., ¶84.) With this deviation, the monthly amount of support awarded by the court was $284.14 ($290.10 total with the processing fee). Although the worksheet computation was attached as Exhibit B to the magistrate's decision, no evidence in support was taken and no rationale for the amount of the deviation was provided by the magistrate. The magistrate awarded mother the tax dependent child exemption. (10/7/11 Magistrate's Dec., ¶85-87.)

{¶14} Both father and mother filed timely objections to the magistrate's decision. Father challenged a number of findings and sought to reinstate shared parenting but have the decision modified to name him residential parent for schooling. Mother's objections challenged both the magistrate's decision to allocate parenting time beyond the standard local schedule and the deviation ordered by the magistrate from the presumptively correct support amount.

{¶15} The trial court's judgment entry addressed each of the parties' objections, found the large majority of father's factual objections untimely, unfounded, and/or meritless and the remainder of father's objections harmless. While father

attempted to attach new evidence to his objections, the trial court did not consider this evidence because it was material that would have been available, "with reasonable diligence," at the time of the hearing. (1/17/12 J.E., pp. 8-9.) The trial court also rejected mother's objection to the parenting time schedule and to the deviation from the presumptively correct support calculation. The court explained that a reduction in support was appropriate due to father's increase in parenting time over the local schedule, the similarity in the parties' incomes, and the significantly lower support mother originally agreed to in the shared parenting agreement executed when the parties had a greater disparity in income. No discussion of the best interest of the child appears in the court's decision.

**{¶16}** The court rejected mother's concerns regarding father's vacation schedule and stated that if father did not comply with the schedule, mother's remedy was to seek a contempt order. The court rejected mother's factual objections concerning the magistrate's findings as harmless error.

**{¶17}** The trial court issued a judgment entry denying both parties' objections to the magistrate's decision and terminating shared parenting. The trial court restated and adopted the rulings in the magistrate's decision. The trial court did not include its own factual findings concerning these orders, did not make any findings concerning the best interest of the child, and did not specifically adopt or incorporate the factual findings made by the magistrate.

**{¶18}** Father filed a timely appeal of the trial court's order. Mother filed a timely cross-appeal of the same entry.

Assignment of Error

The trial court erred and abused its discretion by disregarding relevant evidence and statutory factors; by placing little or no weight on Appellee's improper conduct; by disregarding the Guardian Ad Litem's recommendation, and by terminating the parties' shared parenting plan

{¶19} A trial court's ruling on a motion to terminate a shared parenting agreement is reviewed for an abuse of discretion. *Kougher v. Kougher*, 194 Ohio App.3d 703, 2011-Ohio-6411, 957 N.E.2d 703 (7th Dist.). Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe* 1, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985).

{¶20} The decision to terminate a shared parenting plan is governed by R.C. 3109.04(E)(2)(c) and must, in every instance, be made in the best interest of the

child.  Under R.C. 3109.04(E)(2)(c) "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan * * * whenever it determines that shared parenting is not in the best interest of the child."  If a court terminates shared parenting, "the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the child * * * as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made."  R.C. 3109.04(E)(2)(d).  A court is not required to find a change in circumstances before deciding to terminate a shared parenting plan.  Rather, the decision to terminate the plan may be made by the court *sua sponte* at any point when the court determines it is no longer in the best interest of the child.  *Kougher, supra.*

{¶21}  A decision to allocate parental rights after the termination of shared parenting is governed by the same sections that control an original decision, R.C. 3109.04(A), (B), and (C).  Under these sections the court "shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent, and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children."  R.C. 3109.04(A)(1).  When determining the best interest of the child with regard to an allocation of parental rights "the court shall consider all relevant factors, including, but not limited to:"

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section * * * the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments * * *

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *

(i)  Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)  Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1).  In addition to the above and "all relevant factors," when determining whether shared parenting (or in this instance, continued shared parenting) is in the best interest of the child, the court "shall also consider * * * all of the following factors:"

(a)  The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b)  The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c)  Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d)  The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e)  The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

R.C. 3109.04(F)(2).

**{¶22}** The magistrate's decision directly addresses each of the statutory factors concerning the termination of shared parenting. The trial court's judgment entry, however, does not include any findings or address the statutory factors. The trial court's decision does not reference, specifically incorporate, or attach the factual findings made by the magistrate. The trial court addresses only those factual determinations in the magistrate's decision to the extent necessary to address the parties' objections. As to father's objections, the trial court implicitly accepts the magistrate's findings on each point and overrules father's objections. All of father's arguments on appeal are substantial restatements of objections made to the magistrate's decision that were overruled by the trial court in its final entry.

**{¶23}** Father's belief that the trial court should have adopted in total the recommendation of the guardian ad litem mistakes the role of the guardian's report in combination with the other factors the court must weigh and consider under R.C. 3109.04(F)(1) and (2):

> The role of the trial court is to act as the fact finder and to exercise *independent* judgment in determining the best interests of the children. A trial court may not simply adopt the conclusion of a guardian *ad litem* without further inquiry into the children's best interest; rather, the court must consider all available evidence. The report of a guardian *ad litem* is merely an aid to the trial court and but one factor the court must consider when allocating parental rights and responsibilities. (Emphasis sic.) (Internal citations omitted.)

*Collins v. Collins*, 12th Dist. No. 2009-09-023, 2001 WL 1218900, *3 (October 15, 2001). Father has not identified a defect in the law applied nor does he dispute the facts. Instead, he contends that the court should have reached a different conclusion in weighing these facts. Father believes that mother's decision to abruptly move without permission of the court was a severe enough transgression that she should be punished for this action by automatically losing her status as residential parent. Father's emphasis on mother's decision to move is misplaced. A court's custody decision may not be punitive and a court making a custody determination does not decide which parent should be punished for prior behavior. The court is required to evaluate each parent's ability to cooperate and place the child's interest above their own feelings in a parenting context. In this instance the magistrate found that a move of insignificant distance, even though not pre-approved by the court, was not dispositive in its evaluation.

{¶24} The evidence in the record demonstrates that although father rigidly adhered to a single aspect of the shared parenting plan, the parenting time schedule, he completely ignored all other aspects of "shared" parenting, including his essential responsibilities to foster a positive relationship between R.M. and mother, engage with mother in the joint decision making, and abide by the decisions concerning R.M.'s religious education that were made during the marriage. The trial court indicates in paragraphs 2 and 3, 5–10, 12, and 13 of the final judgment entry that it shares the magistrate's conclusion that the parties have demonstrated a complete inability to engage in shared parenting. The trial court concludes:

The overwhelming evidence in this case is that [father] does not have the present ability to communicate with [mother]. He does not have the present ability to cooperate with [mother]. He does not have the present ability to make joint decisions that affect the child's best interest with [mother]. While [father] started counseling during the pendency of this action to help remedy some of these issues, the fact remains that he does not have the present ability at this time. Therefore, the Court finds no error with the Magistrate terminating the parties' shared parenting plan and designating [mother] as residential parent.

(1/17/12 J.E., pp. 11-12.) In overruling father's objections concerning the termination of shared parenting and designation of mother as residential parent, the trial court cited *Bechara v. Essad*, 7th Dist. No. 03 MA 34, 2004-Ohio-3042 for the principle that shared parenting is only in the child's best interest "if there is a successful shared parenting arrangement. 'Successful shared parenting requires at least two things. One is a strong commitment to cooperate. The other is a capacity to engage in the cooperation required.'" (1/17/12 J.E., p. 11.) In this instance, as in *Bechara*, there appears to be competent, credible evidence that supports a conclusion that shared parenting is not in the best interest of R.M.

{¶25} The magistrate's decision and the trial court's judgment entry, taken together, reflect that the applicable law was applied to the relevant facts before shared parenting was terminated and mother designated the residential parent. The trial court's judgment entry, however, does not contain all of the necessary

determinations. It is the trial court's own ruling, not the magistrate's opinion on a motion to terminate shared parenting, that must comply with the requirements of R.C. 3109. The court must itself consider the listed factors, in addition to all other relevant factors, and conclude on the record whether termination is in the best interest of the child. What the trial court did in this instance was conduct a thorough review and analysis of the objections to the magistrate's decision that implicitly reflects that the trial court agrees with the magistrate's findings of fact and conclusions of law, findings and conclusions that we note are amply supported by the evidence in the record. The trial court entered a decision that disposes of all motions, terminates shared parenting, and designates mother the residential parent, but omits the trial court's essential independent determination that, having considered the relevant evidence and all statutory factors, ending shared parenting is in the best interest of the child. While this conclusion may be inferred from the trial court's decision of the objections, the omission of the trial court's own findings and ruling as to the best interest factors renders what is otherwise an extremely thorough entry incomplete.

{¶26} It is axiomatic that "[j]udgments that simply deal with the objections and adopt a magistrate's decision are not final judgments because they only address whether the decision should be adopted. They do not inform the parties of the trial court's own judgment in the matter they have placed before it." (Citation omitted.) *In re Dayton*, 7th Dist. No. 02 JE 20, 2003-Ohio-1240, ¶9. The trial court's decision that the magistrate did not err in deciding that shared parenting should be terminated is

not a substitute for the trial court's entry of final judgment that contains the necessary factual findings and best interest determination on the issue.

**{¶27}** Hence, while Appellant's assignment of error otherwise appears to be without merit, we must reverse the decision of the trial court for entry of an order that includes the trial court's judgment as to the best interest of the child with regard to the termination of shared parenting and the designation of a residential parent in compliance with R.C. 3109.04 and/or the trial court's decision to adopt and incorporate the magistrate's findings on this issue.

**{¶28}** Turning to the cross-appeal, mother identifies five assignments of error which raises two issues. Four of the five assignments of error address child support; the remaining assignment concerns parenting time. Mother's fifth cross-assignment of error will be discussed first out of order. Her remaining four cross-assignments will be considered together.

<u>Cross- Assignment of Error V</u>

WHEN THERE WAS NEVER A REQUEST FOR ADDITIONAL PARENTING TIME TO THAT PROVIDED FOR IN THE LOCAL PARENTING TIME SCHEDULE NOR ANY EVIDENCE PRESENTED REGARDING ADDITIONAL PARENTING TIME THEN THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING FATHER ADDITIONAL PARENTING TIME.

**{¶29}** Where there is no shared parenting decree, or shared parenting has been terminated, a trial court's decision to grant parenting time is governed by R.C. 3109.051. Part (A) of that section charges the court to:

[issue a] just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child * * * . Whenever possible, the order or decree permitting the parenting time shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child. The court shall include in its final decree a specific schedule of parenting time for that parent.

R.C. 3109.051(D) instructs the court to consider 16 factors, of which the following are relevant in this instance:

(2) The geographic location of the residence of each parent and the distance between those residences, * * *

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

\* \* \*

(7)  The health and safety of the child;

(8)  The amount of time that will be available for the child to spend with siblings;

(9)  The mental and physical health of all parties;

(10)  Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights \* \* \*

\* \* \*

(16)  Any other factor in the best interest of the child.

Each common pleas court is required by R.C. 3109.051(F)(2) to adopt standard parenting time guidelines.  However, when deciding how to divide parenting time "[a] court shall have discretion to deviate from its standard parenting time guidelines based upon factors set forth in division (D) of this section."  R.C. 3109.051(F)(2).

{¶30} A trial court's decision allocating parenting time is reviewed for an abuse of discretion.  *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1988).  A court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable.  *Blakemore*, *supra*.  The central focus of any visitation order is the best interest of the children.  *Kelm v. Kelm*, 92 Ohio St.3d 223, 226, 749 N.E.2d 299 (2001).  "A trial court may limit or restrict visiting rights of a party in order to further the child's best interest."  *Callender v. Callender*, 7th Dist. No. 03-CA-790,

2004-Ohio-1382, at ¶31. The court has the "power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." *Id.*, quoting *Anderson v. Anderson*, 147 Ohio App.3d 513, 2002-Ohio-1156, 771 N.E.2d 303, at ¶18, and *Jannetti v. Nichol*, 7th Dist. No. 97 CA 239 (May 12, 2000).

**{¶31}** Mother contends that the trial court erred in awarding father approximately 1.5 additional days of parenting time every other week during the school year above the time allowed for a non-residential parent under the trial court's local time schedule. Mother contends that because father did not request additional time he was not entitled to time beyond the standard amount. Mother is mistaken. R.C. 3109.051(A) specifically charges the court to "ensure the opportunity for both parents to have frequent and continuing contact with the child." Although the court is required to have a default parenting schedule, nothing in the statute requires the automatic imposition of the local schedule. The statute expressly reserves the trial court's discretion to tailor the parenting time schedule. The factors included in part (D) of the statute require the court to make a wide-ranging analysis of each individual situation before determining the appropriate amount of parenting time.

**{¶32}** Unfortunately, the trial court's decision on this issue has the same defect as the decision to terminate shared parenting: the court does not adopt the magistrate's decision nor does it make its own finding that additional parenting time is in the best interest of the child. While the trial court's agreement with the

magistrate's conclusion is evident from the trial court's ruling on mother's objection to the magistrate's decision, the necessary elements of the best interest finding and the application of R.C. 3109.051 cannot be implied from the language of the trial court's final order. This omission is compounded by a lack of evidence in the record addressing the child's best interest with regard to parenting time. Because the ruling does not contain the necessary findings, we cannot review with any accuracy mother's cross-assignments of error. Thus, the trial court's decision must be reversed and remanded so that the court may adopt a judgment entry that reflects that trial court's findings and is in compliance with R.C. 3109.051.

<u>Cross-Assignment of Error I</u>

WHEN THERE WAS NEVER A REQUEST FOR A CHILD SUPPORT DEVIATION, NOR ANY EVIDENCE PRESENTED AS TO A CHILD SUPPORT DEVIATION THEN THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING A DEVIATION FROM THE PRESUMPTIVELY CORRECT CHILD SUPPORT WORKSHEET AMOUNT.

<u>Cross-Assignment of Error II</u>

THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING A DEVIATION FROM THE PRESUMPTIVELY CORRECT CHILD SUPPORT WORKSHEET AMOUNT WHEN THE FATHER FAILED TO PRESENT ANY EVIDENCE AS TO A DEVIATION.

<u>Cross-Assignment of Error III</u>

AS THE TRIAL COURT FAILED TO SET FORTH ANY FINDINGS OF FACT WHY THE PRESUMPTIVELY CORRECT CHILD SUPPORT WORKSHEET AMOUNT WOULD NOT BE IN THE PARTIES' CHILD'S BEST INTEREST THEN THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING A DEVIATION FROM THE CHILD SUPPORT WORKSHEET AMOUNT.

### Cross-Assignment of Error IV

AS BOTH THE MAGISTRATE'S DECISION AND THE TRIAL COURT'S JUDGMENT ENTRY FAIL TO SET FORTH AN EXPLANATION AS TO HOW THEY ARRIVED AT A 40% DOWNWARD DEVIATION FROM THE PRESUMPTIVELY CORRECT CHILD SUPPORT WORKSHEET AMOUNT THEN THE TRIAL COURT'S JUDGMENT IS ERRONEOUS AS A MATTER OF LAW.

**{¶33}** The remainder of mother's cross-assignments of error all address the propriety of the decision to decrease the presumptively correct child support amount by 40%. For this reason, they will be addressed together. Unlike decisions concerning shared parenting and parenting time schedules, which are guided by statute but left to a trial court's discretion, the amount of child support is primarily determined by the basic child support schedules and the applicable worksheets pursuant to R.C. 3119.02. A trial court's discretion with regard to child support is limited. A court evaluating child support "shall calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the

applicable worksheet, and other provisions of sections 3119.02 to 3119.24." R.C. 3119.02.

**{¶34}** The basic support schedule, codified as R.C. 3119.021, considers the combined gross income of the parents, unless it is below or above the statutory thresholds of $6600.00 and $150,000.00. The parties' combined gross income in this instance is within the range covered by R.C. 3119.021. R.C. 3119.022 codifies the worksheet a court is required to use when making the support calculation. The worksheet considers the income of each parent relative to the shared support obligation and allows for other support and tax obligations. A child support determination "calculated pursuant to the basic child support schedule and applicable worksheet through the line establishing the actual annual obligation, is rebuttably presumed to be the correct amount of child support due." R.C. 3119.03. R.C. 3119.05 governs how a court is to arrive at a gross income amount for each parent.

**{¶35}** If, having complied with R.C. 3119.02 *et seq.*, the trial court decides that the schedule amount is not appropriate, the court may decide to deviate from the presumptively correct child support amount. A court is permitted to order a child support amount that deviates from the amount of support "that would otherwise result from the use of the basic child support schedule and the applicable worksheet * * * if * * * the court determines that the amount * * * would be unjust or inappropriate and would not be in the best interest of the child." R.C. 3119.22. If a court elects to deviate, the court must cite to factual findings in support of that decision in compliance with R.C. 3119.23, which provides:

The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code:

(A)  Special and unusual needs of the children;

(B)  Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;

(C)  Other court-ordered payments;

(D)  Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;

(E)  The obligor obtaining additional employment after a child support order is issued in order to support a second family;

(F)  The financial resources and the earning ability of the child;

(G)  Disparity in income between parties or households;

(H)   Benefits that either parent receives from remarriage or sharing living expenses with another person;

(I)   The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(J)   Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(K)   The relative financial resources, other assets and resources, and needs of each parent;

(L)   The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(M)   The physical and emotional condition and needs of the child;

(N)   The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

(O)   The responsibility of each parent for the support of others;

(P)   Any other relevant factor.

The court may accept an agreement of the parents that assigns a monetary value to any of the factors and criteria listed in this section that are applicable to their situation.

If the court grants a deviation based on division (P) of this section, it shall specifically state in the order the facts that are the basis for the deviation.

The magistrate in this instance conclusively found that the presumptively correct amount of child support would be unjust or inappropriate and not in the best interest of the child. However, the magistrate did not explain how this conclusion was reached or establish the basis of his calculation that resulted in a 40% downward deviation. The evidence of the record likewise does not appear to support this decision.

**{¶36}** The facts referenced by the trial court explaining the deviation are irrelevant to a support determination and do not provide a basis for deviation. The primary consideration in any support determination is the best interest of the child. R.C. 3119.22. The similarity in the parties' incomes, without evidence of additional contributions or other expenses that should be offset, is not a basis for deviation. Similarly, the disparity in the incomes of the parties in 2008 is not a factor to consider when making a support calculation in 2012. The court has terminated the shared parenting plan. The amount of support agreed to in 2008 is in no way reflective of the best interest of the child in 2012 or 2013. Inasmuch as the parties' incomes have changed since they initiated their shared parenting plan, so too have their living

situations and the needs of the child. The factors a court may consider are designed to address extraordinary or unusual circumstances and large disparities in income and resources between the parties. The worksheet itself accounts for incomes that are similar. No deviation is merited due to similar incomes. While it is true that father was allowed a small increase in parenting time, the deviation in time allowed does not appear to amount to an extraordinary circumstance in order to support a 40% reduction in the presumptively correct amount. Nothing in the record before us suggests, given the parties' proximity, the lack of extraordinary health concerns, and the apparent absence of any other burden on father's income, that a 40% deviation would be in the best interest of the child.

**{¶37}** The trial court's decision in this instance does not include factual findings that justify a 40% deviation. The factual basis proposed by the trial court's ruling on mother's objection to the magistrate's decision appears to provide an arbitrary basis for the decision to adopt the trial court's 40% deviation. Due to the omission of the trial court's own findings from the judgment entry, we cannot adequately review this assignment. Hence, the trial court's decision as to the calculation of child support is reversed for lack of a final order and the matter is remanded for a support calculation that complies with R.C. 3119.02 *et seq.* and considers those factors identified by statute as being in the child's current best interest.

<u>Conclusion</u>

**{¶38}** The trial court's judgment entry terminating the parties' shared parenting plan, naming mother residential parent and establishing a parenting schedule that deviated slightly from the standard local parenting time schedule, omit the necessary findings by the trial court. The trial court's rulings on the parties' objections to the magistrate's decision seem to indicate the trial court's intention to accept the magistrate's findings of fact, however, the necessary language was omitted from the final entry. While the trial court has discretion to set parenting time on a schedule that differs from the standard order, the court must give its reasons for so doing in the order. The child support determination does not reflect compliance with R.C. 3119.02 *et seq.* and the relevant evidence in the record on this issue does not appear to support the disproportionate deviation ordered by the magistrate in the absence of extraordinary circumstances. For these reasons, the trial court's decision is reversed in its entirety and the matter is remanded for any necessary proceedings and the entry of a judgment that reflects the trial court's findings and final order on each issue.

Donofrio, J., concurs.

Vukovich, J., concurs.