[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 535.]

DEPALMO, APPELLANT, *v*. DEPALMO, APPELLEE.

[Cite as *DePalmo v. DePalmo*, 1997-Ohio-184.]

*Domestic relations—Child support—Court must apply Child Support Guidelines of R.C. 3113.215 in calculating child support obligation.*

1. Whether a court is establishing an initial child support order or whether the court is modifying an order based on agreement between parties that does not include any order for the payment of child support, the court must apply the Child Support Guidelines as required by the standards set out in *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496.

2. When the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4) in the Child Support Guidelines and the standards set out in *Marker v. Grimm* (1992), 65 Ohio St. 3d 139, 601 N.E.2d 496.

(No. 96-529—Submitted February 18, 1997—Decided June 11, 1997.)

CERTIFIED BY the Court of Appeals for Stark County, No. 95CA0224.

———————————

{¶ 1} Appellant Florence DePalmo ("Florence") and appellee Charles DePalmo ("Charles") are the parents of Michael DePalmo ("Michael"). Michael was born on June 18, 1979. At that time, Florence and Charles lived together and cared for Michael. Florence and Charles were not married.

{¶ 2} In 1988, Florence and Charles separated, and Michael went to live with Charles. There was no formal agreement as to this arrangement, and no parentage action had been brought at this time. Visitation was worked out on a voluntary basis.

{¶ 3} In 1990, Florence was employed full time at the Wayside Inn, earning $4 per hour. Florence engaged in various activities with Michael, including golfing,

baseball games, shopping, boating, and vacationing. Florence provided the money for these activities. Florence also provided the funds for Michael to join the YMCA, to purchase hunting gear, shoes, CDs, and a boombox.

{¶ 4} In 1990, Charles worked at the James River Corporation, where he made approximately $20,000 a year. Charles is the custodial parent and provided financial support for Michael.

{¶ 5} Allegedly, the parties began to have troubles regarding visitation. As a result, on August 13, 1990, Florence instituted a parentage action. The resulting judgment entry determined that Charles was indeed Michael's father. The entry awarded custody of Michael to Charles, and it also explicitly incorporated Charles's waiver of all support from Florence. The entry also formalized visitation. The entry further stated that its orders were in the best interest of the child.

{¶ 6} In 1992, the James River Corporation closed, and Charles went to work for Coalfork Coalmac, where he continued to earn approximately $20,000 per year. In 1993, Charles underwent several surgeries. As a result of the surgeries, Charles missed time from his employment at Coalfork Coalmac. Due to the fact that he missed work, Charles received public assistance for approximately two months in 1993.

{¶ 7} In 1993, the parties once again encountered visitation problems. As a result, on August 23, 1993, Florence filed a motion seeking an order to show cause and for custody of Michael or shared custody. Charles opposed the motions and moved for child support.

{¶ 8} The parties were referred to mediation. Mediation resulted in an agreed entry. The June 2, 1994 agreed entry explicitly addressed visitation issues. All of the other pending motions such as contempt, change of custody, and child support, were specifically overruled in the entry, which reaffirmed the August 13, 1990 entry as remaining in effect as to custody and support.

**{¶ 9}** However, on June 23, 1994, Charles, through intervening party Stark County Department of Human Services ("Human Services"), filed a motion for child support as he was required to do as part of his obligation for receiving public assistance. See R.C. 5107.07. Human Services, through Charles, essentially argued that child support must be in the best interest of the child and that the parents cannot unilaterally agree on an amount of child support less than that called for by the Child Support Guidelines of R.C. 3113.215. Thus, an agreement can provide for less than the support guidelines only if the court approves the deviation pursuant to the method set out in the Revised Code. Therefore, Human Services argued, since the support agreed to in this case did not comport with the guidelines and no court had approved the deviation, support should be modified to require Florence to pay support in line with the guidelines.

**{¶ 10}** Florence opposed the motion for an order for her to pay support. Florence argued that since there was no order for her to pay child support , the test of R.C. 3113.215(B)(4) for determining whether modification of support is warranted did not apply. Instead, she argued, since Charles had waived support, the proper test was the "dual-threshold" test set out in *Anderkin v. Lansdell* (1992), 80 Ohio App.3d 687, 610 N.E.2d 570. Florence argued, pursuant to the *Anderkin* test, that circumstances at the time of the hearing were substantially similar to those on August 13, 1990, the date of the original agreement, and therefore support should not be modified.

**{¶ 11}** The case was referred to a referee, who declined to adopt Florence's argument. The referee found that any change in circumstances was irrelevant. The referee determined that the only time that child support may be less than the amount mandated by the Child Support Guidelines is when the court complies with R.C. 3113.215(B)(1)(a) and (b), citing *Marker v. Grimm* (1992), 65 Ohio St. 3d 139, 601 N.E.2d 496. The referee found that the August 13, 1990 agreement failed to refer to the Child Support Guidelines or to justify any deviation pursuant to R.C.

3113.215(B)(1)(a) and (b). Accordingly, the referee found that Charles's waiver of support for Michael was in contravention of Ohio law.

{¶ 12} After computing support pursuant to the Child Support Guidelines set out in the Revised Code, the referee recommended that Florence pay child support in the amount of $144.53 per month. Florence filed objections to the referee's report. However, the juvenile court adopted the referee's recommendation and ordered child support.

{¶ 13} On appeal, Florence argued that there had been no determination that the parties' circumstances had changed so as to require modification of the child support agreement. The appellate court determined that a change in circumstances was immaterial because the lower court had not modified an order to pay child support but had established child support for the first time. The appellate court found that Ohio law requires that a child support order must be made pursuant to the Child Support Guidelines, unless the court justifies deviating from the guidelines pursuant to R.C. 3113.215(B)(1)(a) and (b). Accordingly, the appellate court upheld the juvenile court's holding that Florence must pay support as governed by the Child Support Guidelines.

{¶ 14} Thereafter, the court of appeals, finding its judgment on this issue to be in conflict with the decision of the Twelfth District Court of Appeals in *Anderkin v. Lansdell* (1992), 80 Ohio App. 3d 687, 610 N.E. 2d 570, and with the decisions of the Third District Court of Appeals, entered an order certifying a conflict. This cause is now before this court upon our determination that a conflict exists.

*Tzangas, Plakas & Mannos*, *James R. Recupero* and *David L. Dingwell* for appellant.

*Kimberly R. Hopwood*, for appellee.

———————————

**LUNDBERG STRATTON, J.**

{¶ 15} The appellate court certified the following issue to us:

4

"[W]hether a Trial Court may modify an existing child support arrangement under which the custodial parent assumes sole responsibility for the support of the children when there is no finding under the following dual threshold test:

"(A) the supporting custodial parent's circumstances have changed to the extent that that parent can no longer provide the total amount reasonable for the support of the children, or

"(B) the noncustodial parent's circumstances have changed substantially and the trial court in its discretion finds it is in the best interest of the children to receive support from that parent."

{¶ 16} We hold that when a trial court either establishes an initial child support order, or modifies an existing child support order based on an agreement under which the custodial parent assumed sole responsibility for the support of the child, the Child Support Guidelines must be followed pursuant to the standard laid out in *Marker v. Grimm* (1992), 65 Ohio St. 3d 139, 601 N.E.2d 496. We specifically reject the dual-threshold test required by *Anderkin v. Lansdell* (1992), 80 Ohio App. 3d 687, 610 N.E.2d 570.

{¶ 17} On April 12, 1990, R.C. 3113.215 became effective, establishing Child Support Guideline, which require a trial court to calculate the child support obligation in accordance with a detailed child support schedule and worksheet outlined in the statute. Am. Sub. H.B. No. 591. 143 Ohio Laws, Part IV, 5957, 5997. This court in *Marker v. Grimm, supra,* has interpreted the guidelines as follows:

(1)    A child support computation worksheet must actually be completed and made a part of the trial court's record.

(2)    This requirement is mandatory and must be literally and technically followed.

(3)    Any court-ordered deviation must be supported by findings of fact and must be journalized.

{¶ 18} In *Marker*, the trial court had not followed the guidelines, had not completed the worksheet, and had made no specific finding that the guidelines were "unjust or inappropriate and would not be in the best interest of the child" as required by R.C. 3113.215(B)(3). The *Marker* court found that the judge was required to strictly comply with the statute and that the amount determined under the Child Support Guidelines was "rebuttably presumed to be the correct amount of child support due" and must be ordered unless the court had done both of two steps: (a) made a factual determination and set forth criteria as to why following the guidelines would be unjust or inappropriate and not in the best interest of the child and (b) made an actual entry in the journal of findings of fact to support that determination. *Marker,* 65 Ohio St. 3d at 141, 601 N.E.2d at 498; R.C. 3113.215(B)(1). This court has continued to require strict compliance in subsequent cases. See *Rock v. Cabral* (1993), 67 Ohio St. 3d 108, 616 N.E.2d 218.

{¶ 19} The conflict in this case arises over what happens when there is no existing "child support order." In this case, the trial court's original entry of August 13, 1990 specifically discussed child support in stating that "all support obligations due from the plaintiff shall be waived." Some courts have found that such a waiver is the equivalent of a lack of a child support order. However, the referee rejected the *Anderkin* test (which started with the premise that such an agreement was the equivalent of no order), which had been proposed by Florence, finding that it was immaterial whether or not there was a prior order.

{¶ 20} The *Anderkin* court established a dual-threshold test, which requires either that the *custodial* parent's circumstances have changed to the extent that the parent can no longer provide the total amount reasonable for support or that the *noncustodial* parent's circumstances have changed substantially and that the court finds that it is in the best interest of the child to receive support from both parents. The courts which follow the *Anderkin* test seem to focus solely on the issue of whether a child support order is already in existence. However, we agree with the

referee and find that this is a distinction without a difference and is immaterial to whether child support should be calculated according to the statutory guidelines.

{¶ 21} Therefore, one must look to the *Marker* standard in this case. The trial court's August 13, 1990 order stated: "IT IS ORDERED, ADJUDGED and DECREED that the parties abide by these orders in the *best interest* of the child." (Emphasis *sic*.) However, the order made no finding of facts or a determination that the application of the Child Support Guidelines would be "unjust or inappropriate." The entry appeared to be merely a rubber-stamping of an agreement between the parents which waived support from Florence. That order was incorporated by reference in the June 2, 1994 order. The referee rejected this approach and instead, using the *Marker* approach, applied the Child Support Guidelines to the facts at hand, completed the worksheet, considered the issues urged by the plaintiff regarding the luxuries or additional benefits she had supplied to her son, and determined that these circumstances did not show that a support award pursuant to the guidelines would be unjust or inappropriate. The referee ordered that full support of the child by both parents would be in the best interest of the child. The trial court adopted the findings of the referee, and the decision was upheld by the court of appeals.

{¶ 22} However, if a support order *already* exists, the only test to determine whether child support shall be *modified* is set forth by R.C. 3113.215(B)(4):

"If an obligor or obligee under a child support order requests the court to modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the support order in accordance with the schedule ***, and if that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support that is required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule *** shall be considered by the court as a

change of circumstance that is substantial enough to require a modification of the amount of the child support order." In determining the ten percent figure, the court takes into account all other factors required by R.C. 3113.215(B)(4), such as the court-ordered cost of health insurance. Medical needs of the child can constitute a sufficient change of circumstances without regard to the ten percent test. If there is a sufficient change in circumstances, the court shall require support in the amount set by the guidelines unless that amount would be unjust or inappropriate or not in the best interest of the child. The ten percent difference applies to the *change in the amount of child support*, not to the change in circumstances of the parents. The trial court also has the obligation to test any proposal of the parents to see if it meets the Child Support Guidelines under the *Marker* standard even if the parties agree between themselves to a different amount or agree that only one party shall assume all support. See *Martin v. Martin* (1993), 66 Ohio St. 3d 110, 609 N.E.2d 537.

{¶ 23} The law favors settlements. However, the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support. *Id.* at 115, 609 N.E.2d at 541.

{¶ 24} Obviously, when the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met. Since the referee found the guidelines were not unjust or inappropriate and were in the best interests of the child, the new amount ordered by the trial court became the child support obligation. We find no abuse of discretion in this.

{¶ 25} In conclusion, we find that the Fifth District Court of Appeals has stated the law correctly. Whether a court is establishing an initial child support

order or whether the court is modifying an order based on an agreement between the parties that does not include an order for the payment of child support, the court must apply the Child Support Guidelines as required by the standards set out in *Marker*. When the court is modifying a preexisting order for the payment of child support, the court must apply the ten percent test established by R.C. 3113.215(B)(4) in the Child Support Guidelines and the standards set out in *Marker*.

{¶ 26} Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

––––––––––––––––––