OPINION
Defendant-appellant, the Warren County Child Support Enforcement Agency (CSEA), appeals a decision of the Domestic Relations Division of the Warren County Court of Common Pleas denying a petition for modification of child support.[1] Andrea and Sheldon Dickson divorced in 1994. At that time, Andrea was awarded custody of the parties' daughter, and Sheldon was awarded visitation and ordered to pay child support. On September 28, 2000, Andrea and Sheldon entered into a shared parenting plan in which Sheldon was named the residential parent, and Andrea was given visitation pursuant to a Warren County standard shared parenting schedule. The parties further agreed that Andrea did not have any income and would not pay child support.
On July 6, 2001, the CSEA filed a motion to modify child support. A hearing was held before a magistrate on August 22, 2001. The magistrate found no change in circumstances and denied the motion. The trial court overruled objections to the magistrate's report. The CSEA now appeals the trial court's decision and raises the following four assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN DENYING A MOTION FOR MODIFICATION OF CHILD SUPPORT WITHOUT FIRST COMPLETING A CHILD SUPPORT CALCULATION WORKSHEET.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY REQUIRING MORE THAN JUST A TEN PERCENT DIFFERENCE FOR A MODIFICATION OF SUPPORT.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN NOT IMPUTING INCOME TO A PARENT WHO IS VOLUNTARILY UNEMPLOYED.
Assignment of Error No. 4:
 THE TRIAL COURT HAS ERRED IN NOT PROTECTING THE BEST INTEREST OF CHILDREN BY SETTING A PRECEDENT THAT BARGAINING OVER A CHILD'S RIGHT TO RECEIVE SUPPORT IS ALLOWABLE IN CUSTODY DISPUTES.
The CSEA argues that the trial court erred by failing to apply the correct standard to modification proceedings, failing to complete the child support worksheet, failing to impute income to Andrea and by allowing bargaining in the area of child support. Because these assignments of error are interrelated, we will address them together.
In its decision, the trial court found that "nothing has changed in the one year since [the shared parenting plan] was entered into" because "Father's income remains approximately the same as does Mother's." The trial court further found that "Father bargained for a change in custodial arrangement of the daughter" and that "mother bargained for [the] requirement that no support be paid by her in exchange for not contesting his request to modify the custody arrangement." The court determined "there is no more reason to impute income to the * * * mother today than there was last year when the parties reached this agreement" and "[u]ntil such time as [Father] shows that the needs of the child cannot be met by him financially or that either his circumstances financially have changed or [M]other's circumstances have financially changed such that a 10% change in calculation exists, the Court shall not allow [F]ather to breech [sic] the agreement that he voluntarily made with [M]other." The trial court did not complete a child support worksheet.
When a court is modifying an order based on an agreement between the parties that does not include any order for the payment of child support, the court must apply the child support guidelines as set forth in Markerv. Grimm (1992), 65 Ohio St.3d 139. DePalmo v. DePalmo,78 Ohio St.3d 535, 1997-Ohio-184, paragraph one of the syllabus. These guidelines require a worksheet to actually be completed by the trial court. Marker at paragraph one of the syllabus. This requirement is mandatory and must be literally and technically followed. Id. at paragraph two of the syllabus. The worksheet directs the court to enter each parent's income on line one. "Income" is defined as:
 (a) For a parent who is employed to full capacity, the gross income of the parent.
 (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent.
R.C. 3119.01(5).
When modification of an existing support order is requested, the court must complete a child support worksheet, recalculating the amount of support required through the line establishing the actual obligation. R.C. 3119.79. If this amount as recalculated is more than ten percent less or greater than the amount of previous child support required, it is considered a change in circumstances substantial enough to require modification of the child support amount. Id. This ten percent test, not consideration of whether the custodial parent's circumstances have changed to the extent that he can no longer provide the total amount reasonable, is the proper standard to apply. See DePalmo at 539. "[W]hen the amount of child support provided by the noncustodial parent is zero, but the Child Support Guidelines clearly establish that the noncustodial parent owes support, then that ten percent difference is clearly met." DePalmo at 540.
Finally, the amount of support payable as calculated on the worksheet is "rebuttably presumed to be the correct amount of child support due." R.C. 3119.03. A trial court may deviate from the amount of child support on the worksheet only if it finds that the amount calculated would be unjust or inappropriate and would not be in the best interest of the child. R.C. 3119.24. R.C. 3119.23 provides factors to guide a trial court in deciding whether deviation is appropriate. However, the trial court may order a deviation only after it has completed the worksheet. The court must make a determination that a deviation is appropriate, and must include findings of fact supporting its decision. R.C. 3119.24;Sullivan v. Sullivan (1999), 135 Ohio App.3d 222, 225.
In this case, no existing child support order existed. Thus, the trial court was required to complete a worksheet to determine the rebuttable child support obligation. See DePalmo at 539-540. In listing income for each of the parties, the court was required to consider potential income of a parent who is unemployed. R.C. 3119.01(5)(b). The trial court neither completed the worksheet, nor considered the potential income of Andrea.[2]
Instead, the trial court relied on the fact that the parties had agreed to change primary custody to Sheldon in return for an agreement that Andrea not pay child support. In reviewing a similar agreement, the Ohio Supreme Court stated:
 The law favors settlements. However, the difficult issue of child support may result in agreements that are suspect. In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures. The compromises may be in the best interests of the parents but not of the child. Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support.
In this "watchdog" role, "the General Assembly enacted comprehensive legislation aimed at providing uniform, consistent and fair support obligations to protect Ohio's children from insufficient and inequitable child support orders. It is the duty of * * * the * * * courts of this state to adhere to the dictates of the General Assembly and to strictly comply with the provisions of the statute." Marker at 143.
Because the trial court did not strictly comply with the terms of the child support statute, we must reverse and remand this case to the trial court. On remand, the trial court is instructed to complete the child support worksheet, determining the amount of Andrea's potential income. Once the worksheet is completed, the trial court may consider if, under the facts of this case, any deviation to the child support obligation is appropriate. Appellant's assignments of error are sustained.
Judgment reversed and remanded to the trial court for further proceedings according to law and consistent with this opinion.
WALSH, P.J., and VALEN, J., concur.
[1] We have sua sponte removed this case from the accelerated calendar.
[2] The record clearly shows that Andrea is unemployed. She stated at the hearing that there was no reason she was not working, that she just didn't want to work, that she had a G.E.D. and had worked in the past.