[Cite as *Clemens v. Clemens*, 2021-Ohio-3094.]

COURT OF APPEALS
MORGAN COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| ADAM B. CLEMENS | : | Hon. Craig R. Baldwin, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. William B. Hoffman, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 21 AP 0001 |
| CHRISTINA CLEMENS | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Civil appeal from the Morgan County Court
of Common Pleas, Domestic Relations
Division, Case No. 19DR0133

JUDGMENT:     Affirmed in part; Reversed and Remanded
In part

DATE OF JUDGMENT ENTRY:     September 7, 2021

APPEARANCES:

For Plaintiff-Appellant

KELLY COADY
10 W. Broad St., Ste. 1550
Columbus, OH 43215

For Defendant-Appellee

MILES D. FRIES
320 Main Street
P.O. Box 190
Zanesville, OH 43702-0190

*Gwin, J.,*

{¶1}   Appellant appeals the December 30, 2020 judgment entry of the Morgan County Court of Common Pleas, Domestic Relations Division.

*Facts & Procedural History*

{¶2}   Appellant Adam B. Clemens ("Husband") and appellee Christina Clemens ("Wife") were married on December 13, 2014.

{¶3}   On July 24, 2019, Husband filed a complaint for divorce against Wife.  Wife filed a counterclaim for divorce on August 15, 2019.  In September of 2019, the trial court appointed Sonya Marshall as Guardian Ad Litem ("GAL") for the parties' minor children, G.C. and C.C.  In its temporary orders, the trial court designated Wife as the temporary residential parent and legal custodian of both minor children.

{¶4}   The GAL filed a detailed report on April 30, 2020.  The GAL noted that Husband screened positive for marijuana on March 4, 2020, and Wife tested negative on March 3, 2020.  The GAL found a shared parenting plan was not in the best interest of the children due to the lack of communication between Husband and Wife, the lack of ability to compromise between the parties, and other actions by the parties during the pendency of the proceedings.  While Husband suggested to the GAL that Wife is actively alienating the children from him, the GAL found no evidence to support those allegations. The GAL made the following recommendations as to the best interest of the children: Wife should be designated the residential parent and legal guardian of the children and Husband should have parenting time.

{¶5}   Wife filed a motion for contempt against Husband on March 16, 2020, arguing Husband violated the terms of the court's order by exercising parenting time

beyond that allowed by the court. Wife filed another motion for contempt against Husband on May 20, 2020, alleging Husband withdrew half of the balance in the parties' joint savings account and alleging he was consuming alcohol while exercising parenting time.

{¶6} Husband filed a motion for contempt against Wife on September 30, 2020, arguing the following: Wife failed to allow holiday parenting time for Veteran's Day in 2019; Wife disposed of a dog in violation of the court's temporary orders; Wife disposed of a tractor in violation of the court's temporary orders; Wife failed to allow reasonable telephone contact between Husband and the children; Wife failed to allow parenting time on Martin Luther King, Jr. weekend in 2019; Wife failed to provide Husband with the telephone numbers of the children's babysitters; and Wife made negative statements about Husband in front of the children.

{¶7} The trial court conducted a trial on October 15th and October 16th of 2020.

{¶8} Blake Kimes ("Kimes") is a licensed chemical dependency counselor. Kimes conducted a drug and alcohol assessment on Husband in July of 2020. Kimes found that Husband did not meet the criteria for a substance abuse disorder and Kimes did not recommend any further treatment for Husband. On cross-examination, Kimes testified her assessment was based exclusively on what Husband told her, with the exception of a urine drug screen. The drug test did not screen for alcohol.

{¶9} Adam Schriver ("Schriver") is a friend of Husband's. Schriver testified that while Husband used to have issues with alcohol, he has changed for the better and is now committed to being a father. Schriver stated he has not seen Husband with his children for approximately two years, and has not spent time with Husband recently.

{¶10} Mary Clemens, Husband's sister, saw Husband and Wife with the children prior to their separation. She did not see Husband drink when with them and thought his parental interaction was appropriate. She has observed the children with Husband since the separation for an hour or two at a time, and does not have any concerns with his or Wife's parenting. Mary sometimes sees Husband drink three or four drinks per weekend. While Mary thinks Husband previously had a problem with drinking, he has changed and that is no longer an issue.

{¶11} Iris Rowe ("Rowe"), Husband's mother, testified she used to be the primary babysitter for the children. Husband lives with her at her home. Rowe no longer babysits for the children during Wife's parenting time. Rowe testified Husband backed off drinking in August of 2019 and now doesn't drink around the children. Rowe confirmed that she testified on August 28, 2019 at the temporary orders hearing that Husband drinks three or four nights a week, five or six beers, and that he drinks one or two nights when he has the kids.

{¶12} Candice Casto ("Casto") is Wife's sister. When the parties were together, she witnessed Wife having more interaction with the children than Husband. She testified Husband did not see G.C. for the first three years of her life. When asked if Husband knew about the birth of G.C., Casto testified she had reason to believe Husband knew G.C. was his daughter because Rowe, Husband's mother, attended G.C.'s first birthday party.

{¶13} Husband and Wife each testified extensively about child custody issues and martial or separate property issues.

{¶14} Wife purchased a home in 2011. Wife testified Husband moved into her home in 2013. He lived in Wife's home prior to their marriage, and Husband stated Wife sometimes used portions of his check to pay the mortgage during that time. However, Wife testified that when Husband lived with her prior to the marriage, he did not make any mortgage payments. He would sometimes give her money, but he never paid any of the bills. Wife sold the pre-marital home in 2017. Wife testified she used the funds from the sale of the pre-marital home to buy a John Deere Tractor, to buy a bedroom suite, and to pay for a part of the down-payment for the marital home.

{¶15} The parties sold the marital home during the pendency of the divorce proceedings. Both agree the amount of the proceeds from the sale is $10,727.11. Wife testified those funds are her separate property because the funds that went into the down-payment for the marital home came from the sale of her pre-marital home and from her pre-marital savings account. Husband specifically testified that Wife could have the proceeds from the sale of the marital home. He stated the $15,000 down-payment used to purchase the marital home came from the sale of Wife's pre-marital home.

{¶16} While Husband testified he purchased the 2007 Ford F-150 truck he drives prior to the marriage, Wife testified it was purchased during the marriage, and she is actually listed as the owner of the truck because it was financed through her employee credit union, and the payments came directly out of her paycheck. Wife testified to the Kelley Blue Book Value of both the Ford F-150 and the GMC Terrain she drives: $14,273 for the Terrain and $8,700 for the F-150. Wife still owes money on the Terrain, and there is approximately $2,027.26 in equity in the vehicle. Husband testified to a Kelley Blue

Book value of $4,868 for the F-150; however, he believes that number is high because the truck is in "rough" condition. Husband also testified the Terrain's value is $12,642.

{¶17} Husband does not know where the John Deere Tractor, purchased for $7,935.43 is, but if Wife still has it, he wants it. If not, he would like half of the proceeds from the sale. Wife noted that Exhibit 13 is a list of tangible personal property the parties each agreed to keep. The John Deere tractor is on the list. Wife has the tractor. Wife testified it is her separate property because she wrote a check for it out of the proceeds from the sale of her pre-marital home.

{¶18} Husband admitted he withdrew funds from the parties' joint bank account during the pendency of the case. He testified it was his half of the parties' tax refund and his half of the parties' stimulus funds, which was approximately $6,000. He stated he did not know the restraining order prohibited him from withdrawing money from the joint account, but stated Wife also violated the order because she took funds out of the account. Wife stated the date of Husband's last withdrawal from the joint account was August 4, 2020. On August 4, 2020, Wife withdrew the balance of the funds ($6,202.21) from the joint account upon the advice of her attorney, and placed it into her counsel's IOLTA account, where it remained at the time of the trial.

{¶19} Wife testified that, during the pendency of the divorce case, she paid expenses for Husband, including insurance on his truck, monthly cell phones charges, and air conditioning repair for the marital home, totaling $2,427.54.

{¶20} Husband has a National Electrical Annuity Retirement Plan through his employment which ended in 2009, prior to his marriage to Wife. His current pension benefit through MEBA is $1,082. Wife agrees the amount in Husband's National Electric

annuity plan are his separate property. However, a part of his current pension was earned during the marriage, so she believes a portion of it is marital property. Wife testified she has an OPERS account she started contributing to in June of 2019. Wife has a 401(K) from Genesis Healthcare. She testified the 401(K) represents funds from 2009 to 2014, which were separate property acquired prior to the marriage. Wife rolled this 401(K) into an Ohio Deferred Compensation Account, so this Deferred Compensation account contains the pre-marital Genesis funds, plus contributions made during the marriage. Husband believes he is entitled to half of Wife's Genesis 401(K), and half of the marital portion of Wife's Deferred Compensation account.

{¶21} Wife has a State Farm Universal Life Insurance Policy. Wife started it when she was 23 years old. Wife testified this is her separate property because she bought and paid for the policy many years prior to the marriage. Wife stated she did make monthly payments on the policy during the marriage.

{¶22} Wife testified she and Husband were in an on-and-off again relationship prior to their marriage when G.C. was conceived. Wife told Husband when she found out she was pregnant. Husband's sister Mary was with Wife when she took the pregnancy test. Rowe came to the hospital to visit G.C. when she was born. Until G.C. was three-and-a-half years old, Husband did not have any involvement with G.C. and made no contribution to G.C.'s support. For the next few years, Husband had sporadic involvement with G.C., until he moved into Wife's home in 2013. Husband testified he did not know he was the father of G.C. until two years after she was born.

{¶23} Wife testified that, during the marriage, she was the primary caretaker of the children. Wife stated Husband's drinking was constantly an issue during their five-

year marriage.  Husband would drink appropriately, but then would go back to drinking heavily, and this cycle continued throughout the marriage.  Wife testified Husband would drink around the children during the marriage.

{¶24} Husband stated he has two or three beers per week, but doesn't overdo it. Prior to the separation, both parties had a beer or two in front of the children and it was not an issue.  Husband testified both he and Wife smoked marijuana together.  Husband last used marijuana in early spring of 2020, uses it approximately once per month, but never does it in front of the children.  Husband agrees that in August of 2019, he was overdoing it with alcohol because it was a month after the separation.

{¶25} Husband testified that, prior to the separation, the children would be with him or Rowe when Wife was working.  After the separation, Husband was very concerned because C.G. could have as many as six different babysitters each week.  Husband was available to watch C.G. during these times and wanted to watch her, but Wife said no.

{¶26} Wife stated the children had so many babysitters during that time because Husband would constantly text and bother the babysitters.  Twice, Husband took C.G. from a daycare in Zanesville when it was not his parenting time.  Husband testified he had concerns about the facility.  Husband found out it took a protective order from the court to prevent him from taking C.G. from the facility, not just a court order setting out his parenting time.  Once he was aware of this, Husband "exercised his parental right," went and picked up C.G., and told Wife she could pick C.G. up after work.  Wife stopped asking Rowe to babysit her children after the parties separated because Rowe yelled at her in front of the children, telling Wife she should not divorce Husband.

{¶27} Wife moved to Tuscarawas County in July of 2020 to be closer to her extended family.  Wife wanted to move there when she and Husband were married, but he refused.  G.C. was in favor of moving, and is very happy in her new home.  Wife now works for the Mideast Ohio Regional Council.  C.G. now attends daycare while Wife is at work.

{¶28} Husband testified Wife did not tell him what school the children would attend after the move and has not provided him with a list of daycare provides for C.G. as required by the temporary order.  Husband is not happy with Wife's move and intends to stay in Morgan County.  Husband wants the children back and believes they should return to Morgan County, where they can attend the schools they attended prior to the move.  Husband said Wife always lived in Morgan County even if she worked elsewhere, and there is no reason why she cannot do that now.  If he is awarded custody of the children, Rowe would watch them overnight, or Husband would switch his work hours.

{¶29}    G.C. (twelve years old) has reported to Wife that, during recent visits with Husband, he drinks while the children are around.  Husband believes G.C. is lying.  Wife stated Husband's phone calls with G.C. are sometimes difficult because Husband tells G.C. she will not be living in Tuscarawas County much longer, but G.C. likes and wants to live in Tuscarawas County.

{¶30}    Husband testified Wife has not been flexible in letting him watch the children when she is at work, and has not been flexible with parenting time.  Husband introduced text messages from Wife denying him additional parenting time.  Wife testified she did not allow Husband extra visitation because he asked repeatedly, and because G.C. did not want to go.  Wife stated there is frequent conflict between Husband and G.C.

{¶31}    Husband is concerned about the children's medical issues, such as G.C.'s flat feet and C.G.'s reaction to medication not being noted in her medical records.  Wife testified she has addressed the medical issues Husband is concerned about with the pediatrician, and the pediatrician recommended no further treatment.  G.C. runs cross-county and does not complain to Wife about her feet.  As to C.G.'s allergy to penicillin, Wife called the pediatrician at the time the issue arose, who told her to stop the medication.  Wife reminded the pediatrician about the allergy at the next appointment, and she again called the pediatrician to make sure it was noted on her chart after Husband voiced his concern.

{¶32}    Husband testified about the motion for contempt he filed against Wife.  On Veteran's Day, he requested parenting time to take the children to a parade.  Wife said she was off that day and would not let him have the children.  Husband also stated she denied him his parenting time on Martin Luther King Day and Labor Day.  Wife testified that Husband never came to the pick the children up for Veteran's Day or Labor Day until a day after his visitation was supposed to have started, so she made other plans.  As to Martin Luther King Day, Wife stated Husband did pick up the children that week-end and he had an overnight visit, but when he asked for an additional day, she said no.

{¶33}    The parties had a dog that Wife gave to a friend.  Wife gave away the dog in September or October of 2019.  In the parties' initial discussion in September or October, Wife told Husband he could have the dog; however, he told her to take the dog and he would take the cat.  Husband never said anything to Wife about wanting the dog until May of 2020, months after she had given the dog away.

{¶34} The GAL viewed both parents' homes and had no concerns. When the GAL spoke to G.C., G.C. told her that she used to know Husband drank a lot. That stopped at the beginning of the separation. However, G.C. reported to the GAL that Husband began drinking during parenting time at the beginning of 2020. G.C. reported one specific time in April of 2020. The GAL did not follow up with Husband about this. The GAL attempted to contact everyone both parties provided her with. Wife provided her a larger list. The GAL attempted to call Russell Heban, who Husband asked her to contact. She attempted to call him, but he did not answer, and his voice mail was not set up. She does not have any documentation that he called her back. Husband did not specifically ask the GAL to contact G.C.'s teachers.

{¶35} When asked about the move, the GAL testified she doesn't think it's far enough away to where Husband can't be active with the children, as he can still participate in school events. While it may have been easier for the children to stay in Morgan County, she believes it is Wife's decision, and the children have connections in Tuscarawas County.

{¶36} The GAL believes the parties have testified to varying degrees about the amount of alcohol Husband consumes. It is clear Husband still drinks some alcohol, which is concerning to her. Despite the assessment by Kimes, the GAL believes Husband has alcohol issues, as he has had three OVI's, and because of his admission to her that he had an issue with alcohol at some point.

{¶37} The trial court issued a judgment entry and decree of divorce on December 30, 2020. The trial court found as follows: the parties do not communicate well and shared parenting would not be in the best interest of the children; the GAL

recommended Wife be designated the residential parent; Wife screened negative for drugs in March of 2020; Husband tested positive for marijuana in March of 2020; Husband has a history of OVI; the marital residence was sold for a profit of $10,727.11; Husband owns a 2007 Ford F-150 which is valued at $7,464.00; Wife owns a 2015 GMC Terrain, which is valued at $14,273.00; Husband's equity in the truck is $7,464;  Wife's equity in the Terrain is $2,027.26; Wife has possession of a John Deere tractor which was purchased with proceeds from the sale of Wife's pre-marital home; Husband violated the temporary restraining order by making multiple withdrawals from the parties' joint savings account, totaling $6,196.55; the court is aware that Wife withdrew the remaining $6,202.21 from the parties' joint savings account and placed it in a trust account of her attorney, due to Husband's withdrawals from the account; both Husband and Wife have retirement accounts, the bulk of which were accrued prior to the marriage; and Wife has a State Farm universal life insurance policy, which was taken out prior the parties' marriage.

{¶38}    The trial court took into consideration the evidence presented, including the report of the GAL, and all the factors set forth in R.C. 3109.04 regarding the allocation of parental rights and responsibilities.  The court found it is in the best interest of the children for Wife to be named the residential parent and legal custodian of the children. The court awarded Husband visitation every Saturday from 10:00 a.m. to 8:00 p.m., with additional parenting time on holidays.  The trial court specifically stated Husband could petition the court for extended parenting time upon providing proof of attending and successfully completing a drug and alcohol assessment, and by participating in and

successfully completing treatment as recommended by the counselor.  The trial court determined Husband should pay Wife $783.61 per month in child support.

{¶39}     The trial court ordered:  Wife is entitled to retain the net proceeds from the sale of the marital residence in the amount of $10,727.11 due to the difference in the equity in their respective vehicles; Husband shall retain the 2007 Ford F-150; Wife shall retain the 2015 GMC Terrain; Wife shall retain the John Deere tractor and State Farm Universal Life Insurance Policy; each party shall retain his or her own retirement accounts; each party shall pay their own debts in their individual names; neither party shall pay spousal support; Wife shall retain the remainder of the parties' joint account ($6,202.21) since Husband withdrew $6,196.55 in violation of the temporary orders; Husband is in contempt of court for violating the terms of the temporary restraining order; and imposed a fine on Husband of $500.00.

{¶40}     Husband appeals the December 30, 2020 judgment entry of the Morgan County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶41}     "I. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ISSUING ITS CHILD SUPPORT ORDER BY FAILING TO INCLUDE A CHILD SUPPORT GUIDELINE WORKSHEET AS PART OF THE FINAL, APPEALABLE JUDGMENT.

{¶42}     "II.  THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN ISSUING PLAINTIFF/APPELLANT'S PARENTING TIME ORDER.

{¶43}     "III. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN AWARDING DEFENDANT/APPELLEE CUSTODY OF THE MINOR CHILDREN.

{¶44}    "IV. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN AWARDING DEFENDANT/APPELLEE THE JOHN DEERE TRACTOR, THE STATE FARM LIFE INSURANCE, AND APPELLEE'S OHIO DEFERRED COMPENSATION RETIREMENT AS HER 'SEPARATE PROPERTY.'

{¶45}    "V. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN AWARDING DEFENDANT/APPELLEE THE ENTIRE PROCEEDS FROM THE SALE OF THE MARITAL RESIDENCE.

{¶46}    "VI. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN FAILING TO PROVIDE PLAINTIFF/APPELLANT AN OPPORTUNITY TO PURGE HIS CONTEMPT.

{¶47}    "VII. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION IN FAILING TO ADDRESS PLAINTIFF/APPELLANT'S MOTION FOR CONTEMPT FILED AGAINST DEFENDANT/APPELLEE."

I.

{¶48}    In his first assignment of error, Husband contends the trial court committed error by failing to include a child support guideline worksheet as part of the final, appealable judgment.

{¶49}    In *Marker v. Grimm*, the Ohio Supreme Court held that a child support computation worksheet must actually be completed and made a part of the trial court's record. 65 Ohio St.3d 139, 601 N.E.2d 496 (1992). This Court has held that the failure to include the worksheet in the record constitutes reversible error. *Bradley v. Hill*, 5th Dist. Delaware No. 19 CAF 10 0053, 2020-Ohio-2682. While *Marker* addressed the application of a statute that has since been repealed, the current version of the support

guideline statute, R.C. 3119.022, continues to state that a standard worksheet form "shall be used in all courts and child support enforcement agencies when calculating child support * * *." R.C. 3119.022(A). Further, R.C. 3119.02 provides that when a court issues a child support order, the court "shall calculate the amount of the parents' child support * * * in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of Chapter 3119 of the Revised Code." Thus, the rule of *Marker* is applicable. *Bradley v. Hill*, 5th Dist. Delaware No. 19 CAF 10 0053, 2020-Ohio-2682.

{¶50} Compliance with the mandate of the Revised Code and *Marker* serves three purposes. First, the worksheet allows an appellate court to review the trial court's compliance with the statutorily mandated process for calculating child support. *Id.* Second, the worksheet supplies the data the trial court used to complete the child support calculation, such as the amounts of each parent's gross annual income, the amounts of any income adjustments, and the amounts of any deviation adjustments. *Id.* The obligation to include the child support worksheet in the record insures that all aspects of the child support calculation are memorialized. *Id.* Finally, compliance with the Revised Code fulfills the court's duty "to act as the child's watchdog in the matter of support." *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 1997-Ohio-184, 679 N.E.2d 266 (1997).

{¶51} Wife contends the trial court did not commit error because there is a worksheet in the record. Wife is correct that there is a child support worksheet prepared by Morgan County Department of Job and Family Services in the record. However, the computation in the worksheet contained in the record has Husband paying $804.23 per month, not $783.61 per month as ordered by the trial court. While it appears the trial court correctly utilized both Husband and Wife's income and health insurance expenses

that they testified to at the hearing, it is not clear how the trial court came to the $783.61 number rather than the $804.23 per month contained in the worksheet.

{¶52} Because the child support worksheet in the record does not match the award of child support by the trial court, we find the requirements of the Ohio Revised Code and *Marker* are not met in this case. Thus, we must reverse and remand the matter to the trial court so that it may comply with the requirements of R.C. 3119.022, R.C. 3119.02, R.C. 3119.22, and the Supreme Court of Ohio's ruling in *Marker*.

{¶53} Husband's first assignment of error is sustained.

II.

{¶54} Husband argues the trial court committed error in issuing parenting time for Husband. Specifically, Husband contends the trial court did not review the factors contained in R.C. 3109.51. Further, Husband argues the trial court did not provide an explanation as to why his parenting time is "severely limited."

{¶55} The standard of review for matters concerning visitation rights is whether the trial court committed an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶56} R.C. 3109.051 states the trial court should consider fifteen factors in determining the children's best interest regarding visitation. These factors include: prior interactions of the children with the parents; location or residence of each parent; the children's and parents' available time; age of the children; the children's adjustment to home, school, community; the wishes and concerns of the children; the health and safety

of the children; the amount of time available to spend with siblings; the mental and physical health of all parties; each parent's willingness to reschedule missed parenting time; and any other factor in the best interest of the children.

{¶57}    The central focus of any visitation order is the best interest of the children. *Kelm v. Kelm*, 92 Ohio St.3d 223, 749 N.E.2d 299 (2001).  "A trial court may limit or restrict visiting rights of a party in order to further the child's best interest."  *Callender v. Callender*, 7th Dist. Carroll No. 03-CA-790, 2004-Ohio-1382.  The court has the "power to restrict the time and place of visitation, to determine the conditions under which visitation will take place, and to deny visitation rights altogether if visitation would not be in the best interests of the child."  *Id.*

{¶58}    If it is clear from the record the court considered the factors in R.C. 3109.051, even if the statute or the factors are not specifically referenced, we will not find an abuse of discretion.  *Bonner v. Deselm-Bonner*, 5th Dist. Guernsey No. 10CA000033, 2011-Ohio-2348.  "[I]t is not an abuse of discretion when it appears from the journal entry that some of the factors under that section were addressed."  *Id.,* quoting *Bernard v. Bernard*, 7th Dist. Columbiana No. 00 CO 25, 2002 WL 206411.  Even when the trial court cites the wrong statute as the basis of the factors it is considering, if the record reveals that the proper factors were considered, the trial court's judgment regarding visitation will be affirmed.  *Id.*

{¶59}    Here, the trial court does not explicitly refer to the R.C. 3109.051 factors in its judgment entry.  Nonetheless, it is clear from the record the trial court did, in fact, consider the factors.  The trial court found the parties do not communicate well, and cited concerns about Husband's alcohol use and positive marijuana test in March of 2020 in

his determination of Husband's parenting time.   The trial court also cited the GAL's testimony and report.  The GAL testified to concerns with Husband's alcohol use, and to the conflict between Husband and G.C.

{¶60}    Husband asserts the trial court did not address Kimes' testimony and/or her credibility, and the decision by the trial court to not believe Kimes' testimony regarding Husband's alcohol assessment was against the manifest weight of the evidence.   We disagree.  It is clear from the trial court's judgment entry that it did not find the testimony of Kimes that Husband did not have a substance abuse disorder and did not need any further treatment credible, as the trial court specifically stated in its judgment entry that Husband could petition the court for extended visitation upon providing proof of attending and successfully completing a drug and alcohol assessment, and by participating in and successfully completing treatment as recommended by the counselor.   As to the testimony of Kimes, the trial court may believe all, part, or none of the testimony of any witness who appears before it.  *Rogers v. Hill*, 124 Ohio App.3d 468, 706 N.E.2d 438 (4th Dist. 1998).

{¶61}    Husband contends the trial court's determination as to his alcohol history is not supported by the record.  We find there is competent and credible evidence in the record to support the trial court's determination of Husband's alcohol history.  Husband and Rowe both admitted that Husband was drinking heavily when the temporary orders were issued in 2019, but both testified that has since improved.  Wife testified this cycle of drinking heavily and improving was consistent with what occurred during the marriage. During the marriage, Husband would drink less, but then would return to drinking heavily. G.C. reported to both Wife and the GAL that Husband drinks when the children are with

him during his parenting time.  Kimes' opinion was based solely on what Husband told her, and the drug test she completed did not screen for alcohol.  The GAL stated that, despite Kimes' assessment, she believes Father has an alcohol issue, as evidenced by his three OVI's and his admission to her about his previous alcohol use.

{¶62}    We find the trial court did not commit error or abuse its discretion in its determination of parenting time for Husband.  Husband's second assignment of error is overruled.

III.

{¶63}    In his third assignment of error, Husband argues the trial court erred and abused its discretion in awarding Wife custody of the children.  We disagree.

{¶64}    The standard of review in initial custody cases is whether the trial court abused its discretion.  *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).  An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).  Given the nature and impact of custody disputes, the court's discretion will be accorded paramount deference because the trial court is best suited to determine the credibility of testimony and integrity of evidence.  *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).  Specifically, "the knowledge a trial court gains through observing witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."  *Id.*  Therefore, giving the trial court due deference, a reviewing court will not reverse the findings of a trial court when the award of custody is supported by a substantial amount of credible and competent evidence.  *Davis v. Flickinger,* 77 Ohio ST.3d 415, 674 N.E.2d 1159 (1997).

{¶65}     R.C. 3109.04 requires a trial court to consider the best interest of the child in making an award of custody incident to a divorce proceeding.   R.C. 3109.04(F)(1) provides that, in making this determination, a court is to consider all relevant factors, including but not limited to: (a) the wishes of the child's parents; (b) the wishes and concerns of the child; (c) the child's interactions and interrelationship with the parents; (d) the child's adjustment to her home and community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to honor and facilitate visitation and companionship rights approved by the court; * * * and (j) whether either parent has established a residence, or is planning on establishing a residence outside the state.  There is no requirement that a trial court separately address each factor.  *Bashale v. Quaicoe,* 5th Dist. Delaware No. 12 CAF 10 0075, 2013-Ohio-3101.  No one factor is dispositive.  *Baker-Chaney v. Chaney*, 5th Dist. Holmes No. 16CA005, 2017-Ohio-5548. Rather, the trial court has discretion to weigh any and all relevant factors.  *Id.*

{¶66}     Husband contends the trial court did not properly consider each of the factors in R.C. 3109.04(F)(1).  However, the trial court specifically stated in its judgment entry that it considered all the factors.  Absent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant factors.  *Id.*  There is no evidence to the contrary to indicate the trial court did not consider the relevant factors in this case. R.C. 3109.04(F) provides the court with the discretion to weigh the relevant factors and determine how those factors apply to the child's best interest.  *Wooten v. Casey,* 4th Dist. Gallia, No. 03CA15, 2004-Ohio-55.

{¶67}     Husband also argues the trial court failed to consider the children's move to a new community and new school.  Husband essentially argues that the trial court did

not properly consider his testimony as to the difficulty of the children's move on them and himself, and committed error in relying on Wife's testimony that the children were excited to move, wanted to move, and were happy in a new school.  It is well established that the trial court, as the ultimate fact-finder and issue-resolver, is free to believe all, part, or none of the testimony of each witness.  *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{¶68}    Finally, Husband contends the trial court should not have relied on the GAL's recommendation as to the best interest of the children because the GAL did not investigate the new school and home of the children.  We disagree.  Our review of the record indicates the GAL performed the duties required, and was available for cross-examination on her report by all parties at trial.  Husband was able to cross-examine the GAL and emphasize the claimed deficiencies in the report and to present witnesses.  Further, the GAL specifically testified the children were doing well in school, getting good grades, and participating in extra-curricular activities.  Due to COVID, the GAL conducted a virtual home inspection of Wife's home, and found it to be appropriate.  The record here indicates the trial court received and weighed the testimony of numerous witnesses in this case, including the GAL.  The trial court is the finder of fact, and addresses the weight and credibility of the evidence before it.  This court may not substitute its judgment for that of the trial court.  *Smith v. Quigg*, 5th Dist. Fairfield No. 2005-CA-002, 2006-Ohio-1495.

{¶69}    We find the trial court's decision that it is in the best interest of the children to name Wife the residential and custodial parent is supported by competent and credible

evidence and was not an abuse of discretion. Husband's third assignment of error is overruled.

IV.

{¶70} In his fourth assignment of error, Husband argues the trial court abused its discretion by awarding Wife the following as her separate property: John Deere Tractor, State Farm Insurance Policy, and Ohio Deferred Compensation. We agree in part and disagree in part.

{¶71} R.C. 3105.171(B) requires the trial court to determine what constitutes marital property and what constitutes separate property. "In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses * * *." R.C. 3105.171(B).

{¶72} R.C. 3105.171(A)(6)(a) defines separate property as "(ii) any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."

{¶73} However, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Therefore, traceability is central when determining whether separate property has "lost its separate character" after being commingled with marital property. *Peck v. Peck*, 96 Ohio App.3d 731, 645 N.E.2d 1300 (12th Dist. Butler 1994). The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Id.* The characterization of property as separate or marital is a mixed question of law and fact. *Globokar v. Globokar*, 5th Dist. Stark No.

2009CA00138, 2010-Ohio-1737. "Trial court decisions on what is presently separate and marital property are not reviewed unless there is a showing of an abuse of discretion." *Vonderhaar-Ketron v. Ketron*, 5th Dist. Fairfield No. 10CA22, 2010-Ohio-6593.

{¶74}     Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact.   "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony."  *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

*John Deere Tractor*

{¶75}     Husband argues the trial court committed error in determining the tractor is Wife's separate property.   Husband's argument is essentially that the items Wife testified she purchased from the proceeds of her pre-marital home ($9,420.25 for the marital residence down payment; $2,020.06 for a bedroom suite; and $7,935.43 for the tractor) exceed the total amount of the proceeds she received from the home ($18,164.79) by approximately $1,200.

{¶76}     We find there is competent and credible evidence to support the trial court's determination.  Wife's undisputed testimony was that she wrote the check for the tractor directly from the proceeds of her pre-marital home.  She stated she closed on the sale of her house at the end of May of 2017, deposited the proceeds into her checking account, and wrote the check for the tractor out of her personal checking account on June 2, 2017.  Husband did not dispute Wife's testimony that it was paid with the funds from her pre-marital home.

{¶77} When asked about the $1,200 difference, Wife specifically testified that the tractor and the bedroom furniture were paid directly out of the proceeds from the pre-marital home. However, she further stated she was not certain that the down-payment for the marital house came entirely from her checking account containing the proceeds from the pre-marital home, as it may have been a combination of funds from this checking account and funds from her pre-marital savings account.

{¶78} Under these circumstances, there was sufficient evidence to allow the trier of fact to conclude the tractor was purchased with Wife's pre-marital funds. As detailed above, the trial court, as the trier of fact, is in the best position to assess the credibility of the witnesses.

{¶79} Husband contends the testimony of Wife is not sufficient to establish the tractor as separate property, and argues that because Wife did not present "documented evidence tracing the money from the sale directly to the purchase" of the tractor, the trial court committed error in finding the tractor her separate property. However, the trial court can find an asset remained separate property without documentary evidence. *Banez v. Banez*, 5th Dist. Stark No. 2006CA00216, 2007-Ohio-4584. We find Wife's undisputed testimony constitutes sufficient competent and credible evidence in support of the trial court's determination.

*Ohio Deferred Compensation*

{¶80} Wife has a retirement account with Ohio Deferred Compensation. She testified that she rolled the account balance from her Genesis Healthcare System Thrift Plan, which was accrued prior to the marriage, into the Deferred Compensation account.

{¶81} Wife argues the appreciation of her pre-marital Genesis Retirement Account is passive appreciation, or an increase in value that was not due to the input of either Husband or Wife's labor, money, or in-kind contributions, but concedes that $5,561.60 of the Deferred Compensation account is marital property.

{¶82} The determination as to whether the remainder of Deferred Compensation Account is passive appreciation or whether it is marital property is within the discretion of the trial court, and we review this determination under an abuse of discretion standard. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 696 N.E.2d 575 (1998). However, the trial court did not yet make that determination in this case, as it incorrectly assigned the entirety of Wife's Deferred Compensation account to her as separate property. While the balance of the account may be passive appreciation of Wife's pre-marital Genesis Retirement Account, it is clear that at least $5,561.60 (employee contributions by Wife in 2019) is marital.

{¶83} Accordingly, we find the trial court committed error in finding the entirety of the Deferred Compensation Account is Wife's separate property. Upon remand, the trial court should determine what portion of the Deferred Compensation Account is marital property, subject to division.

*State Farm Insurance Policy*

{¶84} Husband argues the trial court committed error in finding the entirety of the State Farm Insurance Policy is Wife's separate property. The policy is a Universal Life Insurance Policy. The policy had a cash value of $2,692.06 as of January 25, 2019.

{¶85} Wife testified she obtained the insurance policy when she was 23 years old, prior to the marriage. However, she also testified that she made monthly payments

on the insurance policy during the marriage. Portions of insurances policies paid for with marital funds are marital assets. *Cook v. Cook*, 5th Dist. Delaware No. 18 CAF 0072, 2019-Ohio-1961, appeal not allowed, 157 Ohio St.3d 1405, 2019-Ohio-131 N.E.3d 71. Accordingly, we find the trial court committed error in awarding the entirety of the insurance policy to Wife as her separate property. Upon remand, the trial court should determine what portion of the insurance policy was paid for with marital funds, subject to division.

{¶86} Based on the foregoing, Husband's fourth assignment of error is sustained in part and overruled in part.

V.

{¶87} In his fifth assignment of error, Husband contends the trial court abused its discretion in awarding Wife the entirety of the proceeds from the sale of the marital home because this was not an equal division of the marital asset. We disagree.

{¶88} The Revised Code requires a trial court divide the marital property equally unless an equal division would be inequitable, in which case, "the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable." R.C. 3105.171(C)(1). A trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property. *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). The trial court's judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion. *Id.*

{¶89}   In its judgment entry, the trial court stated that, due to the difference in the equity in the vehicles, Wife shall retain the net proceeds from the sale of the marital residence ($10,727.11).

{¶90}   Husband's primary argument in this assignment of error is that he believes the valuation of the equity in the vehicles assigned by the trial court is an abuse of discretion.   We disagree.   When making an equitable division of the property, the trial court has broad discretion to develop some measure of value.  *Berish v. Berish*, 69 Ohio St.2d 318, 432 N.E.2d 183 (1982).   Thus, "[t]he valuation of marital assets is typically a factual issue that is left to the discretion of the trial court."  *Roberts v. Roberts*, 10th Dist. Franklin No. 08AP-27, 2008-Ohio-6121.

{¶91}   Husband testified he believes the truck should be valued at approximately $4,800.  Wife stated it was worth approximately $8,700, based upon a Kelley Blue Book value.  Husband testified the GMC Wife drives should be valued at $12,642; Wife stated the value is $14,273.

{¶92}   The parties agree that the F-150 was paid off during the marriage.  Wife testified she is listed as the owner, because she financed it through her employee credit union.  Wife and Husband agree the GMC is not paid off, and there is still a car payment on it.  We find the trial court did not abuse its discretion in determining the value of the vehicles.  The trial court accepted the testimony of Wife in determining the value of the GMC, and assigned a slightly lower number than the Kelley Blue Book value testified to by Wife on the F-150, due to Husband's testimony about the condition of the vehicle.  The credibility of the competing valuations was for the trial court to decide.

{¶93} Husband also generally argues that the trial court's property division was not equal and thus the trial court abused its discretion in awarding Wife the proceeds from the marital home. The trial court awarded Husband the equity of $7,464 in the F-150 and the $6,196.55 he took out of the joint bank account, for a total of $13,660.55. The trial court awarded Wife the equity in the GMC Terrain ($2,027.26), the proceeds from the marital residence ($10,727.11), and the remaining amount in the joint checking account ($6,202.21), for a total of $18,956,58.

{¶94} Wife testified she paid $2,427.54 in expenses for Husband during the pendency of the case. Thus, the final difference between the amount allocated to Husband and the amount allocated to Wife was $2,868.49.

{¶95} The mere fact that a property division is unequal, does not, standing alone, amount to an abuse of discretion. *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293; *Cunningham v. Cunningham*, 5th Dist. Knox No. 09-CA-25, 2010-Ohio-1397. The trial court has discretion when making an equitable division of the marital estate under R.C. 3105.171. Based upon the facts and circumstances of this case, we find the trial court did not abuse its discretion in equitably dividing the marital estate.

{¶96} Additionally, during the trial, Husband specifically testified Wife could have the proceeds from the sale of the marital home. On direct examination, when Husband's counsel asked him, "in regards to the proceeds from the sale of the house on Airport Road, what are you asking to be done with that?" Husband responded, "She can have it." Counsel continued, "She can have the proceeds from the sale of the house?" Husband state, "If – if that seems fair, yes." Under the invited-error doctrine, a party may not take advantage of an alleged error that the party induced or invited the trial court to

make.  *He v. Zeng*, 5th Dist. Licking No. 2003CA00056, 2004-Ohio-2434; *Bradley v. Bradley*, 8th Dist. Cuyahoga No. 109792, 2021-Ohio-2514.

{¶97}    Husband's fifth assignment of error is overruled.

VI.

{¶98}    In his sixth assignment of error, Husband contends the trial court abused its discretion in failing to provide him with an opportunity to purge his contempt.

{¶99}    Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion.  *Sloat v. James*, 5th Dist. Stark No. 2008 CA 00048, 2009-Ohio-2849.  The burden of proof in a civil contempt is by clear and convincing evidence.  *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980).

{¶100}   "A sanction for civil contempt must allow the contemnor the opportunity to purge him or herself of contempt."  *O'Brien v. O'Brien*, 5th Dist. Delaware No. 2003-CA-F-12069, 2004-Ohio-5881.

{¶101}   Husband asks this Court to reverse and vacate the finding of contempt against him.  However, there is no dispute that Husband took the funds out of the joint bank account, in violation of the trial court's temporary orders.  Thus, the trial court did not abuse its discretion in finding Husband guilty of contempt for the willful failure to abide by the trial court's temporary orders.

{¶102}   In this case, although a contempt hearing was duly conducted, the sanction provided no purge as required.  *Bair v. Werstler,* 5th Dist. Tuscarawas No. 2004 AP 08 0060, 2005-Ohio-1697.  The trial court classified the $500 as a fine rather than a

purge condition and imposed the fine without affording Husband an opportunity to purge himself of his contempt.

{¶103} Accordingly, Husband's assignment of error is sustained. Upon remand, the trial court has the discretion to issue appropriate purge conditions for Husband to be able to purge the finding of contempt. *Young v. Young*, 5th Dist. Stark No. 2019CA00035, 2020-Ohio-754 (remanded with directions to issue purge provision regarding contempt finding).

VII.

{¶104} In his final assignment of error, Husband contends the trial court committed error and abused its discretion in failing to address his motion for contempt against Wife after both parties presented evidence on the motion at trial. Husband states the trial court's "silence as to the outcome" of his motion for contempt is error. We disagree.

{¶105} A trial court's failure to rule on a motion is presumed to be a denial of that motion for purposes of appellate review. *Hollenbaugh v. Hollenbaugh*, 5th Dist. Delaware No. 13CAF070056, 2014-Ohio-1124. In light of this presumption, we find the trial court did not commit error in failing to rule on Husband's motion. *Id.* (failure to rule on motion for contempt was deemed to be a denial of the motion); *Leister v. Leister*, 5th Dist. Delaware No. 97CA-F-07027, 1998 WL 751457 (overruling wife's assignment of error arguing the trial court erred in not ruling on her motion for contempt); *Echols v. Echols*, 2nd Dist. Clark No. 2020-CA-45, 2021-Ohio-969; *Dimmerling v. Dimmerling*, 7th Dist. Noble No. 18 NO 0460, 2019-Ohio-2710.

{¶106} Husband's final assignment of error is overruled.

{¶107}  Based on the foregoing, Husband's second, third, fifth, and seventh assignments of error are overruled.  Husband's first and sixth assignments of error are sustained.  Husband's fourth assignment of error is overruled in part and sustained in part.

{¶108}  The December 30, 2020 judgment entry of the Morgan County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and reversed and remanded in part, for proceedings consistent with this opinion.

By Gwin, J., and

Baldwin, P.J., concur

Hoffman, J., concurs in part;

dissents in part

_____
HON. W. SCOTT GWIN


_____
HON. CRAIG R. BALDWIN


_____
HON. WILLIAM B. HOFFMAN


WSG:clw 0824

*Hoffman, J., concurring in part and dissenting in part*

{¶109} I concur in the majority's analysis and disposition of Appellant's assignment of error numbers 2, 3, 4,5, 6, and 7.

{¶110} I respectfully dissent from the majority's decision to sustain Appellant's first assignment of error. The required child support worksheet was in the record. The fact the amount Appellant was ordered to pay is less than the amount reflected on the worksheet is an error Appellee could have appealed or cross-appealed. She did not do so. I find any error related to the discrepancy has been waived. Accordingly, I would overrule this assigned error.